Is there the Laboratory Corporation at all? Hi, I would like to plead the court. Hold on one second, Mr. Spencer. I just want to let Mr. Steiner get set up here, okay? Okay. All right. Mr. Spencer, you have three minutes and you can proceed now. Go ahead. Hi, I would like to plead the court. My name is Jaquan Spencer. This case is about, it's in regards to me performing a private test based on, at the time, when I was going to family court, basically it was a discrepancy with family court drug testing. So there was an issue with me and my fiance's hair follicle test. So we decided to perform a private test on the outside of the courthouse, which we did, and when I did so, I requested that LabCorp test my hair follicle test, and it came back positive. And the issue is I wasn't, you know, doing drugs at the moment. I was drug free, came back positive, and I basically started to do my research on the testing. And when I did, so the test came back positive, and it was a LabCorp report, basically showing that LabCorp tested my sample. And I requested a litigation package, and then after I requested a litigation package, I found out that LabCorp wasn't actually, well, LabCorp, they alleged that they weren't the one that performed the test. Based on my chain of custody, it basically, based on what I was told, I was told that my sample was going to be sent to LabCorp, and that's who was going to be testing it. However, psychic medics were the ones that supposedly tested it. After LabCorp received my specimen, they shipped it to psychic medics, which then breached my chain of custody, and I believe that's the reason why my test was falsely positive for cocaine. The case law, the case law, Landy v. Noll, lab specialist, incorporation 91AD3D79, it basically states that basically a laboratory could be found negligent if they failed to perform a test properly. And I felt like my test, like basically, I didn't instruct for the laboratory to ship my test to another laboratory. And I felt based on that, you know, it caused an issue, which caused my test to be falsely positive. All right. Thank you, Mr. Spencer. We'll now hear from Mr. Steiner. Thank you, Your Honors. May it please the Court. Let me address Mr. Steiner so everyone can hear you. Sorry, I'm usually not ever accused of being low-voiced. May it please the Court. Let me address the causation issue first. Between this case and the Omega case, which is also before the Court, the district judge was presented with allegations by appellant that he tested positive for cocaine use on multiple occasions. He submitted to some of those, some of those tests were as a result of court orders and other tests, three he took voluntarily. The complaint against the lab clerk arises out of one of those tests, a voluntary test that he took that tested positive for cocaine, along with the two other tests that he took, I believe, with Omega, that also tested positive for cocaine. The test, as appellant points out, was performed by psychomedics, a non-party to this case. Psychomedics was dismissed long ago from the action. Now, appellant claims all of these tests, all of them, were fraudulent. Putting aside the implausibility of that contention, the harm that he alleges just simply does not arise from the lab clerk test. The family court never learned of or considered the lab clerk test. It based its decisions on his refusal to submit to subsequent tests. Now, appellant claims that he refused because he was concerned that he wouldn't be able to use the positive lab clerk test to dispute what might be, what could be, what may be subsequent positive cocaine test results. And the district court correctly concluded that that does not establish causation. In other words, the district court concluded that appellant's complaint didn't plausibly plead causation between the lab clerk test and the family court test, ordered test, or the refusal to test because he was never, they were never aware of it. It's entirely speculative, of course, what would have happened as it relates to subsequent tests that he refused. I think the Court's analysis, Your Honors, can end there. I think that is the easiest resolution to affirm the district court's conclusion. If the court reaches the duty issue, I think that duty issue is squarely decided by the Court of Appeals decision in Pasternak, which limits the duty to defects in the scientific integrity of the tests. Here, LabCorp acted as a third-party administrator. It neither collected nor tested the sample. That's clear from the allegations in the complaint. So there can be no allegation that it failed to perform any duty. Can you tell me, putting aside, because I think they were the contracted party, I understand they outsourced it so there'd be an issue of liability there.  But what does an individual who believes that they've been subjected to a false positive test, who pleads, I never used those drugs or I haven't used them in five years, is that enough to get to a jury? And if not, why not? It absolutely is not enough. And there's case law across the country that addresses that issue. That is entirely a conclusion. It does not establish that a laboratory departed from the standard of care. A subsequent negative test can never impugn a positive, a prior positive test. And, again, these are issues that come up all the time in the drug testing context. We cite case law in our brief and there's case law, there's other case law out there that affirms that conclusion. Thank you, Your Honor. Thank you both for reserved decisions.